UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CONSOLIDATED PRECISION PRODUCTS
CORP.,

                                Plaintiff,                         15-cv-8721 (PKC)

              -against-                               MEMORANDUM
                                                          AND ORDER

GENERAL ELECTRIC CO.,

                           Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Consolidated Precision Products Corp. ("Consolidated") brings three

claims against defendant General Electric Company ("GE").  It asserts breach of contract and

declaratory judgment claims related to manufacturing specifications that GE implemented for

blades used in its diesel locomotive engines.  It also brings a claim to stay and enjoin an

arbitration proceeding initiated by GE.

          GE moves to dismiss the Complaint for lack of subject matter jurisdiction, or,

alternatively, to stay this action, arguing that an arbitration agreement controls, and that

Consolidated's claims must be decided by an arbitrator.  For the reasons explained, the Court has

subject matter jurisdiction over this case.  However, pursuant to the parties' agreement, an

arbitrator must decide Consolidated's claims, including its challenge to arbitrability.  Pursuant to

the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, and Katz v. Cellco Partnership, 794 F.3d

341 (2d Cir. 2015), GE's motion to stay this action is therefore granted.

BACKGROUND.

GE manufactures turbocharged diesel engines used in locomotives.  (Compl't ¶ 6.)  Consolidated manufactures and sells blades that GE uses as a component in those engines. (Compl't ¶ 8.)  In May 2006 and January 2012, GE and the predecessor to Consolidated entered into Master Supply Agreements that govern GE's purchase of Consolidated's engine blades.[1] (Compl't ¶ 8 & Exs. 1, 2.)  For the purposes of this motion, the relevant terms of the two Master Supply Agreements are identical.

GE's individual purchases from Consolidated are separately governed by purchase orders that incorporate boilerplate Terms and Conditions.  (Compl't ¶ 8 & Ex. 3(C).) Those Terms and Conditions provide that, with limited exceptions, "the parties intend to forsake litigation and resolve with finality any and all disputes arising under or related to this purchase order exclusively by the process identified in this article."  (Compl't Ex. 3(C) § 3(a).)  That article provides for a "binding arbitration to be administered by the American Arbitration Association (AAA) by one arbitrator in accordance with its commercial arbitration rules . . . ." (Compl't Ex. 3(C) § 3(c).)

In 2013, GE changed its technical specifications for engine blades, which prompted Consolidated to alter its manufacturing processes and led to a series of disagreements between GE and Consolidated about whether Consolidated satisfied the new specifications. (Compl't ¶¶ 17-25.)  Pursuant to Article 3 of the Terms and Conditions, on September 14, 2015, GE submitted a demand for arbitration to the AAA, claiming that more than 600,000 blades manufactured by Consolidated did not meet the specifications.  (Compl't ¶¶ 26-28 & Ex. 3.)

---

[1] GE entered into Supply Agreements with Consolidated's predecessor, ESCO Turbine Technologies – Mexico, Inc. For the purposes of this motion, there is no dispute that the Supply Agreements are binding on Consolidated.

Consolidated commenced this action on November 5, 2015, seeking, among other things, a judgment declaring that the blades it supplied to GE conformed with its obligations. (Docket # 1, Compl't ¶¶ 34-35.)  It also alleges that GE unlawfully rejected the blades and did not follow agreed-upon procedures in doing so, including GE's filing of the arbitration demand. (Compl't ¶¶ 36-40.)

On December 1, 2015, Consolidated presented a proposed Order to Show Cause seeking a temporary restraining order and preliminary injunction hearing to stay the arbitration proceedings.  The Court heard argument on the order to show cause application, which GE opposed.  (Docket # 16.)  After hearing from both parties, the Court denied Consolidated's application for a temporary restraining order.  (See Docket # 16.)

While GE's motion to dismiss was pending, Consolidated filed a document that it inaccurately identified on the docket as an "Amended Complaint."  (Docket # 33.)  Although docketed as an "Amended Complaint," GE merely re-filed its initial, still-operative Complaint, this time properly attaching exhibits that it erroneously failed to annex when it filed its Complaint and commenced this action.  The allegations of the "Amended Complaint" are identical to those of the Complaint, including allegations that refer to the exhibits that it previously omitted.

LEGAL STANDARDS.

A.  This Court Has Subject Matter Jurisdiction over Consolidated's Claims.

GE moves to dismiss the Complaint pursuant to Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

- 3 -

When a dispute "involves arbitrability under the [FAA]," there must be "an independent basis for subject-matter jurisdiction," which may include diversity jurisdiction under 28 U.S.C. § 1332.  Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 213 (2d Cir. 2014).  The Complaint alleges, and GE does not dispute, that the parties in this case have diverse citizenship, and that the amount in controversy exceeds $75,000, exclusive of interests and costs.  (Compl't ¶¶ 1-3.)  This is sufficient to allege subject-matter jurisdiction.  Goldman, Sachs & Co., 764 F.3d at 213.

The gravamen of GE's motion is not addressed to subject-matter jurisdiction, but instead to the arbitrability of the parties' dispute, and whether arbitrability is to be determined by this Court or an arbitrator.  Whether premised on diversity or federal-question jurisdiction, a federal court has subject-matter jurisdiction to decide arbitrability.  Id.  Federal courts are routinely called upon to decide whether arbitrability is to be determined by the courts or an arbitrator.  See, e.g., NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1032-35 (2d Cir. 2014).

Because this Court has subject-matter jurisdiction over Consolidated's claims, GE's motion to dismiss pursuant to Rule 12(b)(1) is denied.

B.  Standard to Stay this Action under the FAA.

GE has alternatively moved to stay this action under the FAA.  The FAA provides that if a court determines that an issue "is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3 (emphasis added).  In Katz, 794 F.3d at 343, the Second Circuit concluded that a district court is required to stay proceedings if it determines

- 4 -

that the issues before it are properly decided by an arbitrator. The stay is required even if administrative efficiency otherwise favors dismissal. Id. at 346-47.

Typically, a district court must resolve four inquiries in order to determine whether an action is arbitrable:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004). "Under the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). In this case, the focus of the Court's analysis is whether the parties agreed to arbitrate their contractual disputes and the scope of any such agreement.

In determining whether an issue must be arbitrated, courts apply the same standard used at summary judgment. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) ("the summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability . . . ."). As the movant, GE has the initial burden of coming forward with evidence establishing that the parties' dispute must be decided by an arbitrator. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (applying summary judgment standard). If GE satisfies its burden, Consolidated must come forward with admissible evidence sufficient to show that the parties are not required to proceed with

arbitration.  Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (applying

summary judgment standard).  The non-movant does not satisfy its burden by raising "assertions

that are conclusory or based on speculation." Major League Baseball Properties, Inc. v. Salvino,

Inc., 542 F.3d 290, 310 (2d Cir. 2008) (applying summary judgment standard) (internal citations

omitted).

DISCUSSION

      A.  The Parties Entered Into an Enforceable Agreement to Arbitrate.

      Consolidated argues that GE's motion should be denied because they did not enter

into an enforceable arbitration agreement.  According to Consolidated, the evidence does not

establish the terms and conditions that governed the purchases underlying the parties' dispute.

      To grant GE's motion, this Court must conclude that "the parties entered into a

contractually valid arbitration agreement," and that "the parties' dispute fall[s] within the scope

of the arbitration agreement[.]"  Cap Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d

360, 365 (2d Cir. 2003).  When assessing the validity of an arbitration agreement, "the general

rule is that courts should apply ordinary state-law principles that govern the formation of

contracts." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d Cir.

2010).  The arbitration provision is construed under New York Law.  (Compl't Ex. 3(C) § 3(d).)

      Here, the parties entered into Master Supply Agreements in 2006 and 2012, which

provided that "[t]he Terms of this Agreement and GE's standard terms and conditions of

purchase (the 'GE Terms') shall apply to all of GE's purchases under this Agreement . . .  In the

event of a conflict between this Agreement and the GE Terms, the terms of this Agreement shall

apply."  (Compl't Ex. 1 § 4.5 & Ex. 2 § 4.4; ellipsis in original.)

Article 3 of the Terms and Conditions is headed "Dispute Resolution," and states that "[e]xcept as specifically provided for in paragraph (h) below, the parties intend to forsake litigation and resolve with finality any and all disputes arising under or related to this purchase order exclusively by the process identified in this article."[2]  (Compl't Ex. 3(C) § 3(a).)  Section 3(b) establishes procedures whereby a "senior management representative" from each party is to "confer in good faith to attempt to resolve the matter."  (Compl't Ex. 3(C) § 3(b).)  The parties may also opt to refer their dispute to a mediator.  (Id.)  Thereafter, "[i]f the dispute or claim is not fully resolved pursuant to paragraph b, either party may . . . make a written demand for binding arbitration to be administered by the American Arbitration Association (AAA) by one arbitrator in accordance with its commercial arbitration rules and judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction."  (Compl't Ex. 3(C) § 3(c).)

Consolidated does not dispute the foregoing.  It argues, however, that on this record, the Court cannot decide whether an enforceable arbitration agreement exists.  It asserts that GE has not conclusively identified the set of Terms and Conditions incorporated into the Supply Agreements, and that "[t]here is simply no basis" to conclude that the Supply Agreements incorporated the Terms and Conditions that include the arbitration clause at issue here.  (Opp. Mem. at 5-6.)  Consolidated argues that the Master Supply Agreements of 2006 and 2012 may have incorporated different Terms and Conditions that do not contain an arbitration provision.  According to Consolidated, "there is no evidence that the 2006 Terms and Conditions were in effect when the 2012 Agreement was executed or when any blades were produced

---

[2] Paragraph (h) contains exceptions that are not relevant to the present dispute, specifically including claims related to the parties' proprietary and intellectual property rights, and GE's ability to terminate a purchase order for its own convenience.  Consolidated does not rely on paragraph 3(h).

pursuant to the 2012 Agreement."  (Opp. Mem. at 6.)  Consolidated urges that "the Court cannot conclusively determine that the parties incorporated the 2006 Terms and Conditions into the 2012 Agreement either."  (Opp. Mem. at 6.)

Consolidated identifies no different or conflicting versions of the Terms and Conditions.  As the seller of the blades governed by the individual purchase orders and their Terms and Conditions, Consolidated is in a position to identify any different versions of the purchase orders or Terms and Conditions.  Instead, Consolidated merely asserts that differing versions may exist and that "the Court cannot conclusively determine" whether the version of the Terms and Conditions annexed to the Complaint as an exhibit to GE's arbitration demand governs.

Consolidated's conclusory and self-serving speculation does not cast doubt on whether the parties agreed to the arbitration provision.  Rather, its own Complaint and the annexed exhibits expressly provide that the Master Supply Agreements incorporate the parties' Terms and Conditions, which provide that disputes arising thereunder are to be submitted to binding arbitration administered by the AAA.

The Court therefore concludes that the parties entered into an enforceable agreement to arbitrate.

B.  Under the Terms and Conditions, an Arbitrator Must Decide Arbitrability.

GE argues that the issue of arbitrability must be decided by the arbitrator and not by this Court.  "The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.'"  NASDAQ, 770 F.3d at 1031 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).  "Parties to an arbitration agreement 'may provide that the arbitrator, not the court, shall determine whether an

issue is arbitrable.'"  Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (quoting

PaineWebber Inc., 81 F.3d at 1198.  The arbitrator decides arbitrability only when there is "clear

and unmistakable evidence from the arbitration agreement, as construed by the relevant state

law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."

Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005) (emphasis in original).

   In PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996), the Second

Circuit identified the principles of New York contract law relevant to determining whether there

is clear and unmistakable evidence that the parties intended the arbitrator to decide arbitrability:

(1) "[i]n interpreting a contract, the intent of the parties governs;" (2) "[a] contract should be

construed so as to give full meaning and effect to all of its provisions;" (3) "[w]ords and phrases

are given their plain meaning."  81 F.3d at 1199 (citations omitted) (alterations in original); see

also Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324 (2007) ("Construction of an unambiguous

contract is a matter of law, and the intention of the parties may be gathered from the four corners

of the instrument and should be enforced according to its terms."); CNR Healthcare Network,

Inc. v. 86 Lefferts Corp., 59 A.D.3d 486, 489 (2d Dep't 2009) ("A reading of the contract should

not render any portion meaningless, and the contract should be read as a whole, with every part

interpreted with reference to the whole; if possible, the contract will be interpreted as to give

effect to its general purpose.").

   As noted, the Terms and Conditions provide that "[i]f the dispute or claim is not

fully resolved pursuant to paragraph b, either party may . . . make a written demand for binding

arbitration to be administered by the American Arbitration Association (AAA) by one arbitrator

in accordance with its commercial arbitration rules and judgment on the award rendered by the

arbitrator may be entered in any court of competent jurisdiction."  (Compl't Ex. 3(C) § 3(c).)  In

turn, section 7(a) of the AAA Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to . . . the arbitrability of any claim or counterclaim." Thus, the AAA Commercial Arbitration Rules give the arbitrator "the power to rule on his or her own jurisdiction," including "the arbitrability of any claim or counterclaim."

The Second Circuit has held that where a broad arbitration provision incorporates the AAA Commercial Arbitration Rules, the arbitrator and not the courts decide whether the dispute falls within the arbitration provision. In Contec, the parties agreed to an arbitration provision similar to the one adopted by the parties in this case, stating that "any controversy arising with respect to this Agreement" would be determined by an arbitrator "in accordance with the Commercial Arbitration Rules of the [AAA] . . . ." 398 F.3d at 208. The Second Circuit concluded that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Id.; see also Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 395 (2d Cir. 2011) (when arbitration clause incorporated rules analogous to AAA commercial arbitration rules, the arbitrator and not the court decides arbitrability); Gwathmey Siegel Kaufman & Associates Architects, LLC v. Rales, 518 Fed. App'x 20, 21 (2d Cir. 2013) ("by incorporating the [AAA] rules the parties agreed to have the arbitrators decide arbitrability . . . .") (summary order); JSC Surgutneftegaz v. President & Fellows of Harvard Coll., 167 Fed. App'x 266, 268 (2d Cir. 2006) ("The intent of the parties to commit the question of arbitrability to the arbitrator is further demonstrated by the incorporation of the rules of the [AAA] that empower the arbitrator to determine issues of arbitrability.") (summary order); Lapina v. Men Women N.Y. Model Mgmt. Inc., 86 F. Supp. 3d

277, 283 (S.D.N.Y. 2015) (Sweet, J.) ("It is well-settled that when an arbitration clause incorporates by reference the AAA rule that arbitrators are to determine their own jurisdiction, this incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.") (quotation marks omitted).

The parties adopted a limited exception to these dispute-resolution procedures, which is not applicable here.  They agreed that Article 3 of the Terms and Conditions "shall not apply to and will not bar litigation regarding any claims related to a party's proprietary or intellectual property rights," or limit GE's ability to terminate a purchase order for its convenience.  (Compl't Ex. 3(C) §§ 3(a), 3(h), 25.)  These exceptions do not implicate the arbitrator's authority to determine arbitrability on the claims presented.  See, e.g., NASDAQ OMX Grp., 770 F.3d at 1031 (courts determine arbitrability "where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute.").

Because the Terms and Conditions broadly incorporate the Commercial Arbitration Rules of the AAA, and those rules grant the arbitrator the authority to decide arbitrability, GE's motion to stay this action is granted.

    C.  The Master Supply Agreement Does Not Conflict with the Terms and Conditions.

Consolidated separately argues that the Master Supply Agreement requires any dispute between the parties to be litigated in New York courts, and asserts that the arbitration provision of the Terms and Conditions is therefore in conflict with the Master Supply Agreement.  (Opp. Mem. at 6-9.)  As noted, the Master Supply Agreement states that "[i]n the event of a conflict between this Agreement and the GE Terms, the terms of this Agreement shall apply."  (Compl't Ex. 1 § 4.5 & Ex. 2 § 4.4; ellipsis in original.)

Paragraph 17 of the Master Supply Agreement states that "any controversy arising out of on [sic] in connection with this Agreement shall be governed by and construed under the laws of the state of New York, excluding any choice of law rules.  GE irrevocably consents to jurisdiction and venue in the courts of the State of New York."  (Compl't Ex. 1 § 17; Compl't Ex. 2 § 17.)  According to Consolidated, applying the express terms of paragraph 17, it is "clear that the parties intended that any dispute would be resolved by the courts of New York" and that "the parties intended that ¶ 17 of the Master Supply Agreements would supplant ¶ 3 of the Terms and Conditions."  (Opp. Mem. at 7, 8.)

Consolidated's argument is without merit.  There is no conflict between the Master Supply Agreement and the Terms and Conditions.  The Master Supply Agreement is silent as to arbitration proceedings, whereas the Terms and Conditions expressly provides that "the parties intend to forsake litigation and resolve with finality any and all disputes arising under or related to this purchase order exclusively by the process identified in this article," including the arbitration provision.  (Compl't Ex. 3(C) § 3(a).)  The Master Supply Agreement and the Terms and Conditions are both governed by New York law.  (Compl't Ex. 1 § 17; Compl't Ex. 2 § 17; Compl't Ex. 3(C) § 3(d).).)  Contrary to Consolidated's interpretation, in paragraph 17 of the Master Supply Agreement, GE consents to jurisdiction and venue in the courts of the State of New York, but this provision does not require any dispute to be resolved in such tribunals.  (Compl't Ex. 1 § 17; Compl't Ex. 2 § 17.)   Additionally, the Terms and Conditions contains a provision stating that any eventual arbitration award "may be entered in any court of competent jurisdiction," and further provides that Consolidated "hereby consents and submits to jurisdiction of the Courts of the State of Ohio and the U.S. Federal Courts in the Southern District of Ohio over any action at law, suit in equity or other proceeding that may arise

out of this purchase order." (Compl't Ex. 3(C) § 3(d).)  The Terms and Conditions also provide that arbitration proceedings will occur in Cincinnati, Ohio.  (Compl't Ex. 3(C) § 3(d).)

Rather than requiring the parties to resolve all disputes in the courts of New York, paragraph 17 of the Master Supply Agreement instead memorializes GE's consent to jurisdiction in New York.  Similarly, Consolidated has consented to Ohio jurisdiction for any action that may arise out of a purchase order.  The parties' respective consents to jurisdiction do not raise a conflict with the arbitration provision contained in section 3 to the Terms and Conditions.

Consolidated's reliance on paragraph 17 of the Master Supply Agreement therefore does not defeat satisfy its burden as the party opposing arbitration.

D.  The Action Is Stayed.

The FAA provides that if a court determines that an issue before it "is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  In Katz, the Second Circuit concluded that the FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested."  794 F.3d at 343.  The FAA's directive that a court "shall" stay the action pending arbitration limits a district court's inherent authority to manage its own docket.  Id. at 346-47.  Among other things, dismissal of an action would permit the losing party to immediately appeal, thereby introducing uncertainty as to the arbitrator's authority to proceed.  Id. at 346.  However, "[a] stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award."  Id. at 346.

Consistent with Katz, this action is stayed, pending completion of arbitration.

CONCLUSION

The defendant's motion to stay this action is GRANTED.  (Docket # 21.)  The Clerk is directed to terminate the motion.  The parties shall report to the Court on the status of the arbitration as of September 30, 2016 within five days of that date, or, failing that, the action will be dismissed with prejudice.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 12, 2016

- 14 -